ROSEMARY A. HUGHES *v.* JOSEPH LAMAY ET AL.
(AC 25240)

Dranginis, Harper and Hennessy, Js.

---

Argued February 7—officially released June 7, 2005

*Eddi Z. Zyko*, for the appellant (plaintiff).

*Edward W. Gasser*, with whom, on the brief, was *Kirby G. Huget*, for the appellees (defendants).

*Opinion*

HENNESSY, J. The plaintiff, Rosemary A. Hughes, appeals from the judgment of the trial court rendered after it denied her motion for a new trial. On appeal, she claims that the court improperly refused to allow the admission of testimony about the effect on her of kerosene fumes and improperly denied her motion for a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 1, 1999, the plaintiff entered into a one year lease with the defendants, Joseph Lamay and Kevin Lamay, for the first floor of a multifamily dwelling at 31 Park Street in Thomaston. In November, 1999, the plaintiff smelled a gaseous odor emanating from the upstairs apartment. After calling the gas company, the plaintiff was informed that the odor was emanating from a kerosene can left outside the second floor apartment. The plaintiff informed the defendants of her findings and was told that the defendants were aware of the second floor tenants' occasional use of a kerosene heater on cold nights. Following that conversation, the defendants requested that the second floor tenants discontinue their use of the kerosene heater, which request was complied with.

On March 14, 2000, the plaintiff telephoned the defendants to inform them that she had found another apartment and would be vacating 31 Park Street. The plaintiff vacated the premises on April 2, 2000. Thereafter, the defendants returned the plaintiff's security deposit, but retained her last month's rent to pay for her occupancy of the apartment into April.

The plaintiff initiated the underlying action, alleging common-law negligence, negligence per se,[1] common-law recklessness, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, violation of a statutory duty, nuisance and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Following the presentation of evidence, the jury returned a plaintiff's verdict, but awarded the plaintiff zero economic and zero non-

---

[1] The plaintiff claimed that the defendants had violated General Statutes § 29-318b (a), which provides: "No unvented fuel-burning room heater shall be used in any residence other than a single-family residence unless such heater is fueled by natural gas or propane and is equipped with an oxygen depletion sensor."

economic damages. The plaintiff filed a motion for a new trial, claiming that the jury's verdict was inherently ambiguous. The court denied the motion for a new trial, and this appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly precluded her from testifying that the kerosene fumes caused her headaches, shoulder soreness, dizziness, nausea, watery eyes, difficulty breathing, hydrocarbon poisoning, fibromyalgia and vertigo. We disagree.

Our standard of review of a court's ruling on evidentiary matters is well settled. "[I]n reviewing [the] appellant's claims we will only reverse the decision of the trial court if there was an abuse of discretion." (Internal quotation marks omitted.) *Ullmann* v. *State*, 230 Conn. 698, 721, 647 A.2d 324 (1994). "In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Internal quotation marks omitted.) *Walton* v. *New Hartford*, 223 Conn. 155, 169, 612 A.2d 1153 (1992).

Whether an issue of causation requires expert testimony has been addressed by this court. "When the causation issue involved goes beyond the field of ordinary knowledge and experience of judges and jurors, expert testimony is required." *Green* v. *Ensign-Bickford Co.*, 25 Conn. App. 479, 488, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341 (1991). Expert testimony is not required, however, "when the medical condition is obvious or common in everyday life. . . . Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief." (Citations omitted; internal quota-

tion marks omitted.) *Sherman* v. *Bristol Hospital, Inc.*, 79 Conn. App. 78, 89, 828 A.2d 1260 (2003).

Here, prior to the presentation of evidence, the defendants filed a motion in limine to preclude the plaintiff from introducing evidence that the fumes from the kerosene heater caused her physical ailments. The defendants argued that because the plaintiff had not disclosed any expert witness[2] to testify as to the causal connection between the kerosene fumes and her ailments, and, furthermore, because such testimony was outside the scope of ordinary lay knowledge, such evidence should be precluded. See Practice Book § 13-4 (4). The court agreed and limited the plaintiff's testimony to the fright, nervousness, stress and loss of sleep caused by the plaintiff's fear that the kerosene heater would start a fire in the apartment.[3]

At trial, in accordance with its ruling at the hearing on the motion in limine, the court sustained the defendants'

[2] Practice Book § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ."

[3] The court preliminarily ruled that the plaintiff could not testify as to hydrocarbon poisoning, fibromyalgia and vertigo. After hearing argument, the court ruled as follows: "Okay. Starting with that point, she can testify as to her fright with respect to [the upstairs tenants' dog or cats knocking over the kerosene heater and causing a fire]. She can testify as to her nervousness with respect to those issues. She can testify as to her added stress and to her loss of sleep. The added stress due to depression is needing expert testimony because that's a clinical term, so that cannot be testified to without the foundation of an expert. And certainly, if you want to introduce those medical records, we can talk about that.

"With respect to the kerosene heater causing a sore shoulder, that cannot be testified to. That's off bounds. As to the proximate cause of the headaches being the kerosene heater as opposed to anything else environmental, that can't be testified to. It adds to the kerosene heater causing breathing difficulties. Again, this all needs expert testimony, watery eyes, nausea and dizziness. So, the permitted testimony is with respect to fright, nervousness, stress and loss of sleep."

objection to a portion of the plaintiff's testimony regarding her physical condition as a result of the second floor tenants' use of the kerosene heater. The plaintiff was permitted to testify, without objection, about the fear, nervousness, stress and loss of sleep she allegedly suffered as a result of the second floor tenants' use of the kerosene heater.

On the basis of the previously mentioned cases addressing the requirement of expert testimony, we conclude that whether soreness in one's shoulder, headaches, nausea, dizziness and watery eyes are conditions caused by exposure to kerosene fumes is outside the scope of ordinary knowledge. Similarly, as to the claims of hydrocarbon poisoning, fibromyalgia and vertigo, the court properly required proof via expert testimony due to their complex and uncommon nature. As previously discussed, the plaintiff failed to provide any expert testimony. We therefore hold that the court did not abuse its discretion in ruling as it did.

II

The plaintiff further claims that the court improperly denied her motion for a new trial due to the inherent ambiguity of the verdict in which the jury found the defendants liable yet awarded zero damages. We are not persuaded.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion . . . for a new trial . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Menon* v. *Dux*, 81 Conn. App. 167, 173, 838 A.2d 1038, cert. denied, 269 Conn. 913, 852 A.2d

743, cert. denied, 543 U.S. 1003, 125 S. Ct. 623, 160 L. Ed. 2d 463 (2004).

"[T]he amount of a damage award is a matter peculiarly within the province of the trier of fact . . . and [i]f, on the evidence, the jury could reasonably have decided as [it] did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . ." (Citation omitted; internal quotation marks omitted.) *Wichers* v. *Hatch*, 252 Conn. 174, 183, 745 A.2d 789 (2000). "The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995). "The existence of conflicting evidence [further] curtails the authority of the court to overturn the verdict because the jury is entrusted with deciding which evidence is more credible and what effect it is to be given." *Schettino* v. *Labarba*, 82 Conn. App. 445, 450, 844 A.2d 923 (2004).

In this case, as in *Childs*, the cause, nature and extent of the plaintiff's injuries were contested. The plaintiff's only claimed economic damage was her April, 2000 rent, and it was uncontested that she returned her keys to the defendants during April. On the subject of non-economic damages, although the plaintiff had claimed sleeplessness, fear and anxiety as a result of the upstairs

tenants' use of the kerosene heater, the defendants introduced psychiatric records[4] covering the relevant time period in which the plaintiff discussed issues that were troubling her, yet failed to mention the kerosene heater. The defendants also introduced the plaintiff's diary in which she again made no mention of the kerosene heater. Finally, the defendants presented the plaintiff's notes regarding complaints she had made to the defendants. Those notes contained only one reference to a complaint made in November, 1999, concerning the kerosene heater. On the basis of the foregoing, the jury reasonably could have concluded that the plaintiff was entitled to zero damages.

The plaintiff contends that *Fox* v. *Colony T.V. & Appliance, Inc.*, 37 Conn. App. 453, 656 A.2d 705, cert. denied, 233 Conn. 915, 659 A.2d 185 (1995), is controlling on that issue. There, we stated that "[t]he jury's intent in finding the issues for the plaintiff, but awarding zero damages, is known only to the jurors, and this court's endorsement of one plausible explanation of the verdict over another would amount merely to speculation. . . . The appropriate course of action when such an ambiguous verdict is rendered is to order a new trial on all issues." (Citation omitted; internal quotation marks omitted.) Id., 456, citing *Malmberg* v. *Lopez*, 208 Conn. 675, 682–83, 546 A.2d 264 (1988).

In *Fox*, there was inherent ambiguity in the jury's verdict because "the jury was instructed that the finding of liability involved finding negligence by the defendants, *which was a substantial factor in causing the plaintiff's injuries* . . . ." (Emphasis added.) *Fox* v. *Colony T.V. & Appliance, Inc.*, supra, 37 Conn. App.

[4] The plaintiff supplied the defendants with those records in response to a discovery request, and the court admitted them to impeach the plaintiff's testimony on direct examination.

456. Similarly, in *Malmberg*, our Supreme Court found that a finding of liability with an award of zero damages is inherently ambiguous in a wrongful death action in which the injury is clear. *Malmberg* v. *Lopez*, supra, 208 Conn. 682.

This case, however, is easily distinguishable from both *Fox* and *Malmberg* in that this case involves a claim of negligence per se in which the alleged injuries were speculative at best. In its jury charge, the court instructed: "If you find that the [defendants] violated [General Statutes § 29-318b],[5] then their conduct is negligent as a matter of law." Thus, once the jury determined that the defendants had violated the statute by allowing the second floor tenants to use a kerosene heater, it properly returned a plaintiff's verdict.[6] Because of the speculative nature of the plaintiff's alleged injuries, the award of zero damages fell "within the necessarily uncertain limits of fair and reasonable compensation"; (internal quotation marks omitted) *Childs* v. *Bainer*, supra, 235 Conn. 113; and the verdict, thus, lacks the inherent ambiguity present in *Fox* and *Malmberg*.[7] We therefore conclude that the court did not abuse its discretion by denying the plaintiff's motion for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] See footnote 1.

[6] The plaintiff did not submit interrogatories to the jury.

[7] Although the return of a plaintiff's verdict established a technical legal injury that entitled the plaintiff to at least nominal damages, this court "as a general rule will not reverse and grant a new trial for a mere failure to award nominal damages." *Riccio* v. *Abate*, 176 Conn. 415, 419, 407 A.2d 1005 (1979).